# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FREEDOM MEDICAL, INC.,**

        **Plaintiff,**

v.                                          **Case No:   6:20-cv-771-Orl-37GJK**

**MAHESHWAR SEWPERSAUD a/k/a
GAVIN SEWPERSAUD** and **USINE
ROTEC, INC. d/b/a ROTEC
INTERNATIONAL,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR APPROVAL OF CUSTOMER LIST AND PROSPECTIVE CUSTOMER LIST (Doc. No. 95)** |
| **FILED:** | **July 13, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

### I.  BACKGROUND

On May 1, 2020, Freedom Medical filed a Verified Complaint against Defendant Maheshwar Sewpersaud for violation of the restrictive covenants of his employment agreement, including violation of a non-solicitation provision.  Doc. No. 1.  Freedom Medical alleges Sewpersaud went to work for a direct competitor, Defendant Usine Rotec, Inc. ("Rotec"), misappropriated trade secrets and confidential business information, breach his contract and

fiduciary duty, and committed fraud.[1]  *Id.*  Freedom Medical alleges causes of action for violation of the Defend Trade Secrets Act ("DFTA") and the Florida Trade Secrets Act ("FUTSA"), misappropriation of trade secrets and confidential information, breach of contract, breach of fiduciary duty, fraud, tortious interference with existing and prospective business relationships, and seeks a preliminary and permanent injunction against Sewpersaud.  *Id.* at 16-21.

On May 6, 2020, the Court issued a temporary restraining order ("TRO") based on Freedom Medical's DTSA claim.  Doc. No. 11.  The TRO provided, in pertinent part, that Sewpersaud was enjoined from "directly or indirectly . . . soliciting, doing business with, selling to, renting to, or servicing any current or prospective client, customer, or account, who had been solicited or serviced by Freedom Medical or any affiliate of Freedom Medical within one (1) year prior to the termination of his employment."  *Id.* at 11.  On June 23, 2020, after a hearing, the Court converted the TRO into a preliminary injunction (the "Preliminary Injunction").  Doc. No. 73.

The Preliminary Injunction found that Freedom Medical demonstrated a likelihood of success on its misappropriation claims under DTSA and FUTSA, breach of contract, and breach of fiduciary duty claims.  *Id.* at 7.  The Court found that Freedom Medical demonstrated Sewpersaud misappropriated Freedom Medical's "Confidential Information," defined as "highly confidential business information, including marketing strategies, contact lists, pricing and customer lists, and relationships with purchasers and suppliers."  *Id.* at 1-2, 8.  The Court specifically found that Sewpersaud had already knowingly solicited eight of Freedom Medical's

---

[1] On June 24, 2020, Plaintiff filed an Amended Complaint against Sewpersaud and Rotec.  Doc. No. 75.

former clients or active prospects and accessed Freedom Medical's top customer and product utilization reports. *Id.* at 6, 8.

The Court found the covenant not to compete in Sewpersaud's employment agreement was necessary to protect the Confidential Information and "so protects a legitimate business interest." *Id.* at 10. The Court limited the geographic scope of Sewpersaud's covenant not to compete to his former Florida sales territory.[2] *Id.* at 11. Sewpersaud agreed that the non-solicitation provision in his employment agreement was proper.[3] *Id.* at 12 ("Sewpersaud does not object to these terms and the Court finds them reasonable."); *see also* Doc. No. 60 at 7-8. The Court also found that Freedom Medical demonstrated irreparable injury and that such injury outweighs any harm to Sewpersaud. Doc. No. 73 at 13-14.

The Preliminary Injunction provides that Sewpersaud is enjoined from directly or indirectly "Soliciting, doing business with, selling to, renting to, or servicing any current or prospective client, customer, or account, who has been solicited or serviced by Freedom Medical or any affiliate of Freedom Medical for a period of one (1) year commencing May 6, 2020." *Id.* at 16. The parties were directed to meet and confer and provide the Court with a list of Freedom Medical's customers and prospects subject to constraints of the non-solicitation agreement to "assist the Court in narrowing the reach of any ongoing injunctive relief." *Id.*

On July 13, 2020, after two substantive meet and confers, Freedom Medical filed a Motion for Approval of Customer List and Prospective Customer List (the "Motion"). Doc. No. 95. Freedom Medical advises that, despite attempts to agree upon the lists, the parties reached an

---

[2] The Court found that Sewpersaud's Florida sales territory extended "from the Hillsborough County boundary lines to the east coast of Florida, north to Duval County, and west to Leon County." Doc. No. 73 at 2.
[3] The Non-Solicitation provision states that: "[Y]ou will not, during the term of your employment and for a period of one (1) year after the termination of your employment . . . (ii) solicit, aid in the solicitation, or service in any way . . . any current or prospective client, customer, or account, who has been solicited or serviced by [Freedom Medical] within one (1) year prior to the termination of your employment." Doc. No. 73 at 2 (citing Doc. No. 1 at ¶¶17-19; Doc. No. 1-1).

impasse with Defendants claiming they required significant additional information including, among other things, copies of invoices, amount of invoices, and contracts for each customer claimed and additional information for prospective customers. *Id.* Freedom Medical maintains the information it has already provided is sufficient to demonstrate a relationship or a prospective relationship. *Id.*

The Customer List, filed under seal as Exhibit A to the Motion, includes the name, physical location, billing contact, and billing address for each customer that was serviced within the subject year. Doc. No. 96-9. The Prospective Customer List, filed under seal as Exhibit B to the Motion, includes the prospective customer's name, location, the Group Purchasing Organization ("GPO") and Integrated Delivery Network ("IDN") where applicable, and a contact person for each entity that was solicited within the subject year. Doc. No. 96-9. There is overlap between the lists reflecting Freedom Medical's continuing effort to grow its business with its existing customers. *Id.* at 5.

Bonnie Francis, Director of Commercial Services for Freedom Medical, provided a Declaration in support of both lists explaining the processes involved in creating the lists and the content thereof. Doc. No. 96-9. Freedom Medical's Customer List consists of 2,973 entities that were "invoiced one or more times during the referenced one-year period for equipment rentals, sales or services *delivered to each such entity during that period*." (Emphasis added). *Id.* at 3. Of the 2,973 entities listed, 1,870 are part of a national account with DaVita that Freedom Medical has maintained for more than ten years.[4] *Id.* Customers that had multiple billing identification numbers were reviewed to eliminate duplicative entries. *Id.* at 4. In addition to invoices for each

---

[4] DaVita provides kidney care services, including dialysis services at 2,664 outpatients dialysis centers in the United States. Doc. No. 96-9 at 3.

of these customers, Freedom Medical has, in most cases, other supporting paperwork including equipment rental agreements.  *Id.*

The Prospective Customer List consists of 2,133 entities with which Freedom Medical had specific interactions with one or more representatives of the entity "by means of in person meetings or discussions, email communications or telephone communications and/or written submissions at the specific invitation of the prospective customer, such as a bid solicitation."  *Id.* at 4.  To prepare the list, Branch Managers reviewed customized lists of entities on Freedom Medical's proprietary source file of "acute care, long term acute care and rehabilitation hospitals in each respective branch territory."  *Id.* at 5.  That list was then reviewed by the area Vice President, who in turn revised the list to remove any entities the Vice President did not consider a prospective customer during the relevant period based on marketing plans, actual marketing activity, and active prospects reported to the Vice President.  *Id.*

The Vice Presidents also added to the list the identities of IDNs, mostly hospital systems, for which they are personally, actively involved in marketing.  *Id.*  Ms. Francis notes the following large IDNs included on the list are Common Spirit (195 locations), Select Medical (113 locations), Trinity (57 locations), Advent (39 locations), Kaiser Permanente (43 locations), UHS (29 locations), Kindred (68 locations), and Post Acute (38 locations).  *Id.* at 5-6.  Phil Held, Vice President for National Accounts, also identified entities he personally solicited including the Veterans Administration ("VA") and two Group Purchasing Organizations ("GPO") – Vizient and Premier, Inc. *Id.* at 6.  Freedom Medical has approved supplier contracts with both of these entities.  *Id.*

With respect to the GPOs, Freedom Medical only included "GPO members located within the territories serviced by Freedom Medical, and which were otherwise the subject of active

marketing efforts during the one year period." *Id.*  Similarly, the VA facilities included were either the subject of active marketing activity during the one year period or were located within the Veterans Integrated Service Networks ("VISN") covered by a blanket purchase agreement awarded to Freedom Medical.  *Id.*  The blanket purchase agreement covers 37 specific VA facilities located within the VISN in the northeast region of the United States.  *Id.*  Freedom Medical has provided a copy of the blanket purchase agreement to Defendants.  *Id.*  With respect to other VA facilities, Freedom Medical only included VA facilities that were the subject of specific marketing activity during the one year period.  *Id.* at 7.  The Prospective Customer List does not include any healthcare facilities in Alaska, Guam, Hawaii, Puerto Rico, or Wyoming. *Id.*[5]

On July 27, 2020, Defendants filed a response to the Motion (the "Response").  Doc. No. 106.  Defendants argue that Freedom Medical fails to demonstrate that it has a legitimate business interest in "substantial" relationships with specific clients and instead seeks to protect all of its customer relationships no matter how insubstantial.  *Id.* at 2.  Defendants argue that Freedom Medical needs to provide more detail such as invoices, equipment rental agreements, and contracts. *Id.*  Defendants do not object to the inclusion of entities in the Orlando territory where Sewpersaud previously worked, certain entities where there is "independent evidence" to support the existence of a substantial relationship, and the VA hospitals identified in the blanket purchase agreement.[6]  *Id.*  Defendants request that the Court reject the proffered lists and require Freedom Medical to provide further information to determine which customers Sewpersaud should be

---

[5] On July 22, 2020, August 21, 2020, and September 3, 2020, Freedom Medical filed notices of updates to the Prospective Customer List including additional contact information.  Doc. Nos. 104, 114, 120.

[6] Defendants indicate they do not object to line items 7, 711, 730, 731, 737, 759, 778, 790, 829-41, 843, 878, 902, 911, 912, 1623, 1982, 2527, and 2535 in the customer list and 503, 535-36, 550, 593, 601, 606, 610, 612, 637, 639-50, 663, 964, 975, 989, 1002, 1023-24, 1044, 1233, 1356, 1360-61, 1367, 1389, 1393, 1421, 1454, 1477, 1484, 1667-68, 1696, and 2054.  Doc. No. 106 at 2-3.

restrained from soliciting pursuant to the Preliminary Injunction. Defendants provide no evidence, but rely solely on their arguments with respect to the propriety of the lists presented.

## II. APPLICABLE LAW

The Court may issue a preliminary injunction if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Preliminary injunctions are "drastic" and "extraordinary" remedies, not to be issued unless the movant has "clearly established" the burden of persuasion on each element. *Id.* at 1210 (quotation marks and citation omitted). They are the exception, not the rule. *Id.* "Under Florida law, a restrictive covenant in the employment setting is valid if the employer can prove '(1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer.'" *Osborne Assocs. v. Cangemi*, No. 3:17-cv-1135, 2017 U.S. Dist. LEXIS 187862, at *19 (M.D. Fla. Nov. 14, 2017) (*AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004)).

## III. ANALYSIS

Freedom Medical operates a business renting and selling medical equipment to health care providers including long term, acute care, and rehabilitation hospitals, VA facilities, and outpatient dialysis centers nationally. Doc. Nos. 73 at 1; 96-9. Sewpersaud, Freedom Medical's former sales representative in central Florida, is now the resident United States sales representative for Rotec, Freedom Medical's direct competitor. Doc. Nos. 73 at 9, 106 at 1-2. The Court has already issued a Preliminary Injunction against Sewpersaud finding that Freedom Medical has

demonstrated: a substantial likelihood of success on the merits on its misappropriation of trade secrets, breach of contract, and breach of fiduciary duty claims; irreparable injury; the balance of harms weighs in favor of an injunction; and that entry of an injunction would not be adverse to the public interest. Doc. No. 73. The Preliminary Injunction enforces both the non-compete and non-solicitation provisions of Sewpersaud's employment agreement. The Preliminary Injunction permits Sewpersaud to continue working for Rotec but he may not work in his previous territory for a period of one year. *Id.* The Preliminary Injunction also provides that Sewpersaud is enjoined from "[s]oliciting, doing business with, selling to, renting to, or servicing any current or prospective client, customer, or account, who has been solicited or serviced by Freedom Medical or any affiliate of Freedom Medical for a period of one (1) year commencing May 6, 2020." *Id.* The Court directed the parties to confer and provide customer lists so that the Court could narrow the customers that fall within the restrictions of the Preliminary Injunction. *Id.* Thus, the Court must now consider the appropriate scope of the non-solicitation provision it has already found to be enforceable.

Defendants argue that Freedom Medical must prove a substantial, exclusive relationship with each customer and prospective customer, essentially demonstrating that the customer relationship is a legitimate business interest. However, the Court has already found that the non-solicitation provision is enforceable based on a legitimate business interest and has specifically enjoined Sewpersaud from soliciting customers and prospective customers who were serviced or solicited within the subject year. The only issue to be resolved, just like the geographic scope of the non-compete agreement, is the scope of the non-solicitation agreement. Sewpersaud had access to customer lists and Confidential Business Information that could harm Freedom Medical if he is permitted to solicit existing or prospective Freedom Medical customers. The Court has

also found Sewpersaud has already violated the non-solicitation provision and solicited existing and prospective customers. Doc. No. 73 at 6. While the Court has already found a substantial likelihood of success on the merits, Freedom Medical must still demonstrate a reasonable basis for the lists it has proposed. *See Osborne Assocs.*, 2017 U.S. Dist. LEXIS 187862, at *19. Thus, the issue is whether, and to what extent, Freedom Medical has established a relationship with existing and prospective customers that should be protected under the Preliminary Injunction.

### A. Customer List

Freedom Medical has provided a list of current customers who have been serviced by Freedom Medical within the relevant year by reviewing invoices generated by the company. Doc. No. 96-9. Freedom Medical identifies 2,973 entities that were "invoiced one or more times during the referenced one-year period for equipment rentals, sales or services *delivered to each such entity during that period*."[7] (Emphasis added). *Id.* at 3. The Customer List provides the customer name, location, and billing information for each entity. Doc. No. 96-9 at 9. Customers are located in almost every state and include dialysis outpatient centers, hospitals, acute care and long term care facilities, and homecare entities. Doc. No. 96-9, Ex. A. In addition to invoices, Freedom Medical indicates it has equipment rental agreements and contracts with many customers to support the customers' inclusion on the list. Doc. No. 96-9.

Ms. Francis indicates that there is variability within a given year, and from year to year, in terms of the amount of business customers generate resulting in invoicing for equipment and services. *Id.* at 4. Ms. Francis indicates that Freedom Medical also continues to actively market to many of these customers, seeking to generate more business, as reflected by the substantial

---

[7] Defendants argue in their Response that Ms. Francis does not state when the service occurred or whether the list includes clients who were invoiced for services received outside the subject year, but Ms. Francis's Declaration refutes Defendants' contention. *See* Doc. Nos. 96-9 at 3; 106 at 4.

overlap between the Customer List and Prospective Customer List. *Id.* at 5. Of the 2,973 entities listed in the Customer List, 1,870 are part of DaVita, a national account that Freedom Medical has maintained for more than ten years.[8] *Id.* at 3. The account with DaVita is considered a corporate account and services are billed, then paid, centrally. *Id.*

The Court finds that Freedom Medical has provided sufficient information of a business relationship with the customers on the Customer List to support their inclusion in the non-solicitation provisions of the Preliminary Injunction. As such, the Court recommends approving the Customer List.

B. Prospective Customer List

Freedom Medical represents that the 2,133 entities on this list were solicited "by means of in person meetings or discussions, email communications or telephone communications and/or written submissions at the specific invitation of the prospective customer, such as a bid solicitation." Doc. No. 96-9 at 4. Freedom Medical provides a contact for each entity, along with the customer's name and location. Doc. No. 96-9, Ex. B. In addition to this information, Ms. Francis states that Freedom Medical's Vice Presidents are personally, actively involved in marketing efforts for IDNs, the VA, and Vizient and Premier, Inc., two GPOs. *Id.* at 5-6. With respect to the GPOs, VA, and other national accounts, Freedom Medical only includes facilities that were subject of active marketing efforts during the subject year or part of the VISN covered by the VA blanket purchase agreement.[9] *Id.* at 6.

---

[8] Defendants' argument regarding the DaVita entities is refuted by Ms. Francis's declaration that each separate entity on the list was invoiced one or more times during the year. Further, Ms. Francis states that DaVita provides services at 2,664 outpatient dialysis centers in the United States, which would suggest Freedom Medical did not simply include each and every outpatient center based on the ongoing relationship with the parent organization. Doc. No. 96-9 at 3.
[9] Ms. Francis's Declaration refutes Defendants' argument, that Freedom Medical was listing every facility associated with an IDN or GPO even if Freedom was not soliciting all such members. Doc. No. 106 at 6. Ms. Francis states that "Although each GPO includes thousands of individual hospitals and other health care facilities as members expressly identified as third party beneficiaries of the discounted pricing and other terms of the GPO contract with Freedom Medical, *we only included on the Prospective Customer lists GPO members located within the territories*

The Court finds that Freedom Medical has provided sufficient information to demonstrate solicitation of business from the customers on the Prospective Customer List to support their inclusion in the non-solicitation provisions of the Preliminary Injunction by providing a description of the types of solicitations and interactions as well as contact information. As such, the Court recommends approving the Prospective Customer List..

### IV.   CONCLUSION

Accordingly, it is RECOMMENDED that the Motion be **GRANTED** as follows:

1. The Customer List be approved as presented and Sewpersaud be enjoined from soliciting any customer on that list under the terms of the Preliminary Injunction; and

2. The Prospective Customer List be approved as presented and Sewpersaud be enjoined from soliciting any customer on that list under the terms of the Preliminary Injunction.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on September 21, 2020.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

*serviced by Freedom Medical, and which were otherwise the subject of active marketing efforts during the one year period*." (Emphasis added).   Doc. No. 96-9 at 6.   A similar representation was made regarding relevant VA facilities. *Id.* at 6-7. Further, in reviewing the Prospective Customer List each facility is listed with a contact person, and is identified as part of a GPO and IDN where applicable.   Often, a facility is listed as being part of a GPO, for example Premier, Inc., and also being part of an IDN.   Thus, to the extent that Freedom Medical only included facilities within a GPO that were the subject of active marketing efforts, that designation would seemingly encompass the IDN and IDN parent organization within which the facility exists as well.

Copies furnished to:

Counsel of Record
Unrepresented Parties