UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FREEDOM MEDICAL, INC.,

                    Plaintiff,

v.                                              Case No:   6:20-cv-771-Orl-37GJK

MAHESHWAR SEWPERSAUD a/k/a
GAVIN SEWPERSAUD and USINE
ROTEC, INC. d/b/a ROTEC
INTERNATIONAL,

                    Defendants.

_____

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the

following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS FOR LITIGATING DEFENDANTS' CONTEMPT** (Doc. No. 167) |
| **FILED:** | **November 17, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part.**

## I.    BACKGROUND

On May 1, 2020, Plaintiff Freedom Medical, Inc. ("Freedom Medical") filed

a Verified Complaint against Defendant Maheshwar Sewpersaud for violation of

the restrictive covenants of his employment agreement, including violation of a non-solicitation provision.   Doc. No. 1.   Freedom Medical alleges Sewpersaud went to work for a direct competitor, Defendant Usine Rotec, Inc. ("Rotec")[1], misappropriated trade secrets and confidential business information, breached his contract and fiduciary duty, and committed fraud. *Id.*

On May 6, 2020, the Court issued a temporary restraining order ("TRO") against Sewpersaud.   Doc. No. 11.   On June 23, 2020, the Court converted the TRO into a preliminary injunction (the "Preliminary Injunction").   Doc. No. 73. After the Preliminary Injunction was entered, Freedom Medical conducted a second forensic examination of Sewpersaud's electronic devices on July 10, 2020.[2] Doc. No. 167 at 1.

On August 24, 2020, Freedom Medical filed a Motion for Order to Show Cause ("Motion for Order to Show Cause") seeking contempt sanctions against Sewpersaud and Rotec for violating the Preliminary Injunction after comparing the results of the second forensic examination of Sewpersaud's electronic devices with the first forensic examination.   Doc. No. 115.   A contempt hearing was held on October 27, 2020.[3]   On November 3, 2020, the Court issued an order finding

---

[1] On June 24, 2020, Plaintiff filed an Amended Complaint against Sewpersaud and Rotec.   Doc. No. 75.
[2] The first forensic examination had been conducted on May 9, 2020.   Doc. No. 167 at 1.
[3] On September 29, 2020, after the Motion for Order to Show Cause was filed and a hearing was set, Sewpersaud filed a suggestion of bankruptcy (Doc. No. 134), but the Court later determined that the civil contempt proceeding should continue.   Doc. No. 149 at 4.

Sewpersaud *and* Rotec in civil contempt for violation of the Preliminary Injunction. Doc. No. 163.   The Court's Order ("Contempt Order") recounts both the procedural history of the injunctions and the details of Defendants' most recent violations and is incorporated herein by reference.   Doc. No. 163.   As part of the Contempt Order, the Court taxed the costs and attorney's fees incurred by Freedom Medical in litigating the Motion for Order to Show Cause against Rotec as a monetary sanction.   Doc. No. 163 at 13.

On November 17, 2020, Freedom Medical filed a Motion for Attorneys' Fees and Costs (the "Motion").   Doc. No. 167.   Freedom Medical seeks a total of $65,124.80 in attorney's fees and $12,677.36 in costs.   *Id.* at 4.   Freedom Medical includes the affidavits of lead counsel, Gregory H. Mathews, and local counsel, Nelson Bellido, in support of the attorney's fees and costs claimed as well as detailed billing records and resumes for the attorneys and a law clerk.   Doc. Nos. 167-2; 167-3.   On December 1, 2020, Rotec filed a response in opposition to the Motion (the "Response"), objecting to the reasonable number of hours billed and some of the claimed costs.   Doc. No. 168.   Rotec made both general and specific objections.   Doc. Nos. 168, 168-1, 168-2, 168-3.

## II.   **APPLICABLE LAW.**

The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."   *Loranger*

*v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985) (Florida courts have also adopted this approach).   The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are the following: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.   *Johnson*, 488 F.2d at 717-19.[4]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).   In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience.   *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Id.* at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.   In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought

to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise.   *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).   A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).   When a court finds the number of hours billed unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time or it may reduce the number of hours by an across-the-board cut. *Bivins*, 548 F.3d at 1350.

III.   **ANALYSIS.**

A.   <u>Attorney's Fees</u>

1.   Reasonable Hourly Rate.

Freedom Medical seeks the following hourly rates for its attorneys, paralegals, and legal assistants: 1) Mr. Mathews $385; 2) Edward Kang $475; 3) Mr.

Bellido $470; 4) Dimitra Kapnoutzi $210; 5) Jeannette Lorenzo $135; and 6) Tiffani Youngblood, Clare Choi, Jacob P. Archer, and Justin Cross (collectively the "Legal Assistants") $130.   Doc. Nos. 167 at 5; 167-2 at 4, 10-11.   Both Mr. Mathews and Mr. Bellido provide declarations in support of the requested hourly rates.   Doc. No. 167-2; 167-3.   Counsel supports the hourly rates requested by providing resumes and recounting the experience of each attorney involved.   Doc. No. 167-2 at 15-18, 20-22; 167-3 at 28-30.   Counsel also indicates that Mr. Mathews and Mr. Kang reduced their standard rates of $530 and $650 based on their relationship with Freedom Medical and that they also undertook the sanctions matter on a contingent basis.   Doc. No. 167-2 at 4, 6.   Rotec does not object to the hourly rates claim by Freedom Medical for its attorneys, paralegals, and legal assistants.   Doc. No. 168.   As Rotec does not object, the Court finds that the hourly rates requested for Mr. Mathews, Mr. Kang, Mr. Bellido, Ms. Kapnoutzi, Ms. Lorenzo, and the Legal Assistants are reasonable.

2.      Reasonable Number of Hours.

Freedom Medical's counsel requests to be compensated for the following hours reasonably worked:   Mr. Mathews, 96.9 hours; Mr. Kang, 2.0 hours; Mr. Bellido, 33.8 hours; Ms. Kapnoutzi, 19.4 hours; Ms. Lorenzo, 18.91 hours; Ms. Youngblood, 18.4 hours; Mr. Archer, 1.7 hours; Mr. Cross, 11.3 hours; and Ms. Choi, 2.1 hours.   Doc. Nos. 167-2 at 38; 167-3 at 9, 17, 24, and 26.

Rotec objects to the time billed on four grounds: 1) paralegals and legal assistants performed clerical work; 2) there are duplicative and excessive entries, including Mr. Mathews' research and drafting of the Motion for Order to Show Cause and Mr. Bellido's preparation time for the hearing; 3) block billing; and 4) excessive time billed for the post-hearing preparation of the exhibits to be submitted.   Doc. Nos. 168 at 9-10; 168-2 at 2-7.   Additionally, Rotec requests a fifty percent across the board reduction in fees because Sewpersaud violated the TRO and the Preliminary Injunction whereas Rotec only violated the Preliminary Injunction, is arguably less culpable, and should not have to pay the full amount when it was not the only party that violated the Court's orders.   *Id.* at 12-13.

### a.   *Clerical Work*

Work performed by a paralegal is recoverable "only to the extent that the paralegal performs work traditionally done by an attorney."   *Scelta v. Delicatessen Support Servs.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) (quoting *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988)).   Work that is clerical or secretarial in nature is not separately recoverable and is considered as overhead expenses.   *Id.*   Clerical work includes tasks such as preparing binders, preparing, filing, and serving documents, preparing spreadsheets of exhibits, or typing an exhibit list. *See HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-cv-2004, 2018 U.S. Dist. LEXIS 67703, at *24-25 (M.D. Fla. Mar. 26, 2018).

Rotec challenges $7,404.50 of the total fees requested for the work of all the paralegal staff, $5,825.00 for Ms. Kapnoutzi and the Legal Assistants and $1,579.50 for Ms. Lorenzo.   Doc. No. 168-2 at 2, 5, 7.   Upon review, the Court finds that while some entries include clerical work, others do not and are properly compensable.   *Id.*   However, there is also block billing and vague entries that make determining the appropriateness of each entry difficult. *Id.*   Instead, given the proportion of inappropriate entries in the billing, the Court will apply an across the board twenty-five percent reduction to the total amount of fees challenged by Rotec. *Bivins*, 548 F.3d at 1350.   Twenty-five percent of the amount challenged is $1,851.12.[5]

### b.   *Duplicative, Unreasonable, and Excessive*

Rotec argues that several groups or categories of related tasks were billed for unreasonable or excessive amounts of time.   Doc. No. 168 at 9.   Rotec identifies the 41.2 hours Mr. Mathews' firm billed in researching and drafting the Motion for Order to Show Cause, with Mr. Mathews billing 31.7 of those hours. *Id.*   Mr. Mathews' firm then spent 57.1 hours preparing for the hearing, and Mr. Mathews spent 31.3 of those hours.   *Id.*   However, Rotec does not challenge specific time entries for Mr. Mathews or his firm's work in this regard, it generally

---

[5] Normally, the Court would simply reduce the amount of hours by twenty-five percent, but since the subject entries are all billed at different rates, an across the board reduction in the total amount of fees awarded is more practical and obtains a similar result.

alleges that the total amount of time was unreasonable. Doc. No. 168 at 9.   **A fee opponent's failure to explain with specificity the particular hours he or she views as excessive or unreasonable is generally fatal.**   *See Scelta, Inc.*, 203 F. Supp. 2d at 1333.   The Court finds the time spent by Mr. Mathews and his firm reasonable.

Rotec then challenges the time spent by local counsel, Mr. Bellido, and claims that many of his time entries are redundant, identifying 10.2 hours billed specifically.   Doc. No. 168 at 9-10.   Having reviewed the entries challenged with respect to Mr. Bellido, given that he was local counsel and had an obligation to be prepared for the hearing as well, the Court finds no deductions are necessary on this basis.

c.      *Block Billing*

Rotec also challenges some of Mr. Bellido's billing entries as block billing that also contain redactions, irrelevant matters, and excessive and redundant billing.   Doc. No. 168 at 10; 168-3.   When the subject matter of work performed is redacted, the Court has insufficient information to determine whether the time worked on the task was reasonable. *See Travelers Home & Marine Ins. Co. v. Calhoun*, No. 5:13-cv-25, 2014 U.S. Dist. LEXIS 45494, 2014 WL 1328968, at *2-4 (M.D. Fla. April 2, 2014).   Similarly, block billing precludes a proper review of an attorney's tasks.   *See Ceres Envt'l Servs. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198,

203 (11th Cir. 2012).   This is even more problematic when an entry includes matters not related to the matter at issue.

The Court finds that there are some redactions which interfere with the Court's ability to determine what work was done by Mr. Bellido, which are compounded by larger block entries of time that do not always separate out work that was done solely related to the Contempt Order.   *Id.*   Upon review of the billing entries challenged by Rotec, the Court finds that a deduction of 2.6 hours is appropriate for the entries on September 18th and September 30, 2020, that contain redactions and work that is not directly related to the Motion for Order to Show Cause billed in the same block of time.   Doc. No. 168-3 at 3.

d.      *Post-Hearing Fees*

Rotec also challenges the amount of attorney's fees incurred in resolving the admission of Freedom Medical's exhibits in support of the Motion for Order to Show Cause into evidence after the hearing.[6]   Doc. Nos. 168 at 10-11; 168-1 at 3-5, 7-25.   Each party blames the other for the excessive amount of time involved in resolving the matter.   Doc. Nos. 162 at 25; 167 at 7; 167-2 at 10; 168; 168-1.   The Court has reviewed the exhibit list, the joint notice, the Declaration of Gregory H.

---

[6] Rotec makes no specific objections to any particular time entries, rather Rotec argues the entire exchange was unnecessarily complicated by Freedom Medical's counsel and the hours requested should be reduced accordingly.   Doc. No. 168 at 10-11.

Mathews that accompanied those filings, and counsel's declarations herein.   *See*
Doc. Nos. 160; 161; 162; 167; 167-2; 168; and 168-1.

Freedom Medical failed to introduce its exhibits into evidence at the
hearing.   The Court addressed this oversight and directed the parties to work
together to resolve this matter.   Doc. No. 158.   Rotec did not agree to stipulate to
the admission of Freedom Medical's exhibits, but instead raised objections which,
in turn, required Freedom Medical to support the admissibility of its exhibits,
which then, in turn, caused Rotec to further adjust its objections accordingly. *Id.*
Conferences were conducted, e-mails were exchanged, and documents were
prepared and filed with the Court regarding the introduction of approximately 50
exhibits by Freedom Medical.   *Id.*   In the end, certain exhibits formed the basis
for the Contempt Order and the Court specifically overruled Rotec's objections to
any of the subject exhibits that were referenced in the Contempt Order. Doc. No.
163 at 1 n.1.   The Court finds that the attorney's fees requested in relation to the
post-hearing submission of Freedom Medical's exhibits should not be reduced
because of the amount of time it took the parties to resolve the matter.

### e.   *Fifty Percent Reduction*

Finally, Rotec suggests that the fees claimed are extraordinarily high and an
across-the-board reduction is appropriate.   Doc. No. 168 at 13.   Rotec requests
that the Court take into consideration that the majority of work had to be done

because of Sewpersaud, his deletion of emails and messages, and his misrepresentations under oath.   *Id.*   Rotec claims that it "has not been alleged that Rotec participated in any way in those alleged activities, yet it is Rotec that is being taxed with all of the related costs because Sewpersaud has filed for bankruptcy."   *Id.*   Rotec argues that this inequity is best addressed by a reduction of the fee award.   *Id.*

The District Court found Rotec in civil contempt, observing that it was not an "innocent bystander in [Sewpersaud's] chicanery" and that, in one particular instance, Rotec specifically asked Sewpersaud to reach out to one of Freedom Medical's customers *inside* Sewpersaud's former sales territory after the injunctions were in place.[7]   Doc. No. 163 at 10-11.   The communications between Rotec and Sewpersaud that were discovered in the second forensic search of Sewpersaud's electronic devices served as the basis for the Court finding Rotec in contempt.

The District Court then imposed monetary sanctions against Rotec for its violation of the Preliminary Injunction.   *Id.* at 13.   Those monetary sanctions are Freedom Medical's attorney's fees and costs for litigating the Motion for Order to

---

[7] The District Court had specifically placed a geographic limitation in the Preliminary Injunction so that Sewpersaud could continue to work for Rotec as long as he did not do so *inside* his former sales territory.   Doc. Nos. 73 at 11; 163 at 10-11.   In the Contempt Order, the District Court found that Rotec knew Sewpersaud wasn't permitted to work in Orlando but it ignored the Preliminary Injunction.   Doc. No. 163 at 11.

Show Cause.  *Id.*  The District Court did not indicate that those fees should be apportioned, divided, or reduced in any way.  *Id.*  Furthermore, the undersigned sees no principled basis upon which to apportion the fees in this case based on relative culpability.   Thus, this Court will not reduce the amount of attorney's fees on that basis.

The Court recommends an award of reasonable attorney, law clerk, and paralegal's fees of $62,051.23, as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Greg Mathews | 96.9 | $385 | $37,306.50 |
| Edward Kang | 2.0 | $475 | $950.00 |
| Nelson Bellido | 31.2 | $470 | $14,664.00 |
| **Law Clerk/Paralegals** | **Hours** | **Rate** | **Total** |
| Dimitra Kapnoutzi | 19.4 | $210 | $4,074.00 |
| Jeannette Lorenzo | 18.91 | $135 | $2,552.85 |
| Legal Assistants[8] | 33.5 | $130 | $4,355.00 |
| 25% reduction for portion of challenged paralegal time | | | -$1,851.12 |
| **Total** | | | **$62,051.23** |

---

[8] Ms. Youngblood, 18.4 hours; Mr. Archer, 1.7 hours; Mr. Cross, 11.3 hours; and Ms. Choi, 2.1 hours.   Doc. Nos. 167-2 at 38; 167-3 at 9, 17, 24, and 26.

B.     Costs

Freedom Medical seeks costs associated with the Motion for Order to Show Cause of $12,677.36, including: $10,156.25 for forensic work performed by Brian Halpin [9] in support of the Motion for Order to Show Cause, including the preparation of a Declaration; $768.35 for the transcript of the preliminary injunction hearing; $1,306.30 for the transcript of Sewpersaud's deposition; and $212.95 and $233.51 for delivery of exhibit binders to the Court and to Mr. Mathews and Mr. Bellido, respectively.   Doc. Nos. 167 at 8-9; 167-2 at 11, 35, 53, 54-58.

---

[9] As counsel explains:

> The database of information captured during the second inspection and stored in Relativity, a database management system, consists of approximately 25,000 documents representing about 175,000 pages of documents. Extensive work was performed by Plaintiff's forensic analysis expert Brian Halpin of the Capsicum Group comparing the results of the second inspection with the results of the first inspection, which took place on May 9, 2020. Dozens of hours related to this review, analysis, and assessment were incurred during July 2020, for which Plaintiff was invoiced approximately $12,431.25 by Capsicum and paid by Freedom Medical- none of which is included in this Motion for Award for Attorneys' Fees and Costs.

> In connection with preparing the Sanctions Motion, I requested Mr. Halpin to prepare a Declaration addressing aspects of the motion including the change in device retention settings, the loss or deletion of extensive relevant information, accessing confidential information of Plaintiff after the TRO and the provenance of the excel spreadsheet of Bed Improvements prepared by Defendant Sewpersaud. Mr. Halpin's Declaration accompanied by six exhibits appears as Doc. 115-4 of the Sanctions Motion.

Doc. No. 167-2 at 5, 6.

Rotec objects to the charges from Mr. Halpin to the extent they do not directly relate to the Declaration prepared in support of the Motion for Order to Show Cause.   Doc. No. 168 at 11-12.   Rotec also objects to the cost of Sewpersaud's deposition transcript, because Freedom Medical would have likely obtained the transcript in the normal course of litigation, and the charges for delivering binders to Freedom Medical's counsel as being a matter of convenience. *Id.* at 12.

"In awarding costs as a sanction for contempt, the district court is not bound by § 1920's list of costs that may be taxed pursuant to a final judgment."  *Tom James Co. v. Morgan*, 141 F. App'x 894, 900 (11th Cir. 2005) (citing *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 130-31 (5th Cir. 1973)).

The Court finds that all of the requested costs should be taxed against Rotec with one exception.   The Court finds that Mr. Halperin's fees are properly taxed against Rotec.   Mr. Mathews explains that the initial forensic work was paid for by Freedom Medical and the only costs sought to be taxed are those that were directly related to preparation of the Motion for Order to Show Cause.   Doc. No. 167-2 at 5, 6.   Additionally, the cost of transcribing Sewpersaud's deposition is properly taxed despite the fact that Freedom Medical may have incurred the expense in the normal course of litigation.   Sewpersaud and Rotec's actions necessitated the use of the deposition testimony now, and the expense was

incurred in support of the Motion for Order to Show Cause.   The fees to deliver the exhibit binder to the District Court and Mr. Bellido is also acceptable.   The Court agrees, however, that the $99 fee to deliver exhibit binders from Kang, Haggerty & Fetbroyt, LLC, in Philadelphia to Mr. Mathews in West Chester, Pennsylvania via courier on two occasions, for a total of $198, should not be taxed as costs when there is no indication that it was in any way necessary to effect delivery in that manner.   Doc. No. 167-2 at 55, 58.   Accordingly, the Court recommends taxing costs in the total amount of $12,479.36 against Rotec.

## IV.   <u>CONCLUSION</u>

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 167) be **GRANTED in part** and D**ENIED in part** as follows:

1.   Freedom Medical be awarded $62,051.23 in attorney's fees to be taxed against Rotec;

2.   Freedom Medical be awarded $12,479.36 in costs to be taxed against Rotec; and

3.   The Motion be otherwise **DENIED.**

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on December 18, 2020.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties